IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 07-00105-CR-W-GAF |
| DAVID TAYLOR, | |
| Defendant. | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S PRO SE MOTION TO REDUCE SENTENCE
PURSUANT 18 U.S.C. §3582(c)(1)(A)(i) – COMPASSIONATE RELEASE**

The United States of America, through Teresa A. Moore, Acting United States Attorney for the Western District of Missouri, and the undersigned attorney, provides the following response in opposition to David Taylor's ("the defendant") motion for compassionate release. The defendant seeks to have his 240-month sentence for knowingly and intentionally possessing with the intent to distribute methamphetamine (actual), a Schedule II controlled substance, in an amount of fifty (50) grams or more, reduced to time served based upon extraordinary and compelling reasons. The defendant argues extraordinary and compelling reasons exist because he cannot receive adequate dental treatment, he suffers from allergies, and has a bad leg. (D.E. 63.) Because the defendant has not demonstrated extraordinary and compelling reasons justifying a reduction and because the factors set forth in 18 U.S.C. § 3553(a) do not support a reduction in the defendant's sentence, the Government opposes the request and asks the Court to deny the defendant's motion.

### I. Procedural History

On March 14, 2007, the defendant was indicted for knowingly and intentionally possessing with the intent to distribute methamphetamine (actual), a Schedule II controlled substance, in an

amount of fifty (50) grams or more, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (D.E. 14.) On January 30, 2008, the defendant was committed to the custody of BOP for a total term of 240 months. Upon release, the defendant shall be on supervised release for a term of ten years. (D.E. 43.)

The defendant filed a motion to vacate under 28 U.S.C. § 2255 on September 22, 2008 (civil case number 08-CV-713). (D.E. 45.) On January 14, 2009, the Government filed its suggestions in opposition to D.E. 45 – identified as D.E. 1 in 08-CV-713. (D.E. 12, 08-CV-713.) The Honorable Gary A. Fenner denied the defendant's motion D.E. 1 on January 29, 2009. (D.E. 17, 08-CV-713.) On February 4, 2009, the defendant filed a motion to amend/correct D.E. 1. (D.E. 19, 08-CV-713.) The Honorable Gary A. Fenner denied the defendant's motion D.E. 19 on February 23, 2009. (D.E. 21, 08-CV-713.)

On May 26, 2015, the defendant filed a *pro se* motion to reduce sentence pursuant to 2014 Drug Guidelines Amendment 782. (D.E. 46.) On December 8, 2017, the Honorable Brian C. Wimes denied D.E. 46 stating "the defendant is subject to a statutorily minimum required sentence of 240 months which is the current sentence imposed. Therefore, no reduction is authorized." (D.E. 48.)

On January 11, 2021, the defendant filed a *pro se* emergency motion for compassionate release. (D.E. 50.) The Government filed its opposition to D.E. 50 on February 4, 2021. (D.E. 52.) The Honorable Gary A. Fenner denied D.E. 50 on February 22, 2021 after complete review of the motion on the merits. (D.E. 53.) The defendant filed a notice of appeal regarding D.E. 53 on March 11, 2021. (D.E. 58.) The United States Court of Appeals judgement ordered the district court is summarily affirmed (D.E. 61) and the mandate was issued on April 15, 2021. (D.E. 62.) Based on

2

Case 4:07-cr-00105-GAF    Document 65    Filed 11/29/21    Page 2 of 17

the information made available on the Bureau of Prisons Inmate Locator, the defendant's release date is March 12, 2024. (*See* https://www.bop.gov/inmateloc/.)

On November 15, 2021, the defendant filed a motion for compassionate release asserting he should be released from custody. (D.E. 63.) On September 13, 2021, the defendant made a request for compassionate release to the Warden at Milan F.C.I. (D.E. 63.) The Warden provided a response to the defendant's original request for compassionate release on December 23, 2020 stating the defendant is able to provide self-care and is not confined to a bed or chair more than 50% of waking hours and therefore, the request is denied. The Warden has not provided a response to the defendant's latest request for compassionate release.

## II. First Step Act

The First Step Act, effective December 21, 2018, provides inmates the ability to file a motion for compassionate release, an ability previously only vested in the BOP. The statute, 18 U.S.C. § 3582(c)(1)(A), originally permitted judicial relief only upon a motion by the Director of the BOP. Section 603(b) of the First Step Act now permits courts to act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment once it has been imposed except that, under subsection § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling reasons," if such reduction is consistent with applicable policy statements of the Sentencing Commission, after considering the factors set forth in 18 U.S.C. § 3553(a), and after determining the defendant is not a danger to the community

as provided in 18 U.S.C. § 3142(g). (U.S.S.G. § 1B1.13(2).) The pertinent policy statement, U.S.S.G. § 1B1.13, defines specific medical, age, and family circumstances as possibly justifying a sentencing reduction under this statute, and further authorizes a sentencing reduction based on an extraordinary and compelling circumstance identified by the BOP. (§1B1.13 Commentary n.1(D).)

The Government acknowledges that Courts are divided on the applicability of U.S.S.G. §1B1.13 when a motion for compassionate release is brought directly by an inmate under the First Step Act, rather than a motion by the Director of the BOP. This division is, at least in part, because the text of § 1B1.13 is tailored to motions specifically brought by the BOP, and the Guideline has not been updated or revised since 18 U.S.C. § 3582(c) was amended to allow inmates to bring motions on their own behalf. Compare *United States v. Warren*, 456 F.Supp.3d 1083, 1084-86 (D. Minn. Jan. 1, 2020), with *United States v. Jones*, 2020 WL 6817488, at *6-9 (6th Cir. Nov. 20, 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). *See also United States v. Gunn*, 2020 WL 6813995, at *1-2 (7th Cir. Nov. 20, 2020).

The Eighth Circuit has not yet decided this issue. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."). However, while it remains undecided within the Eighth Circuit whether § 1B1.13 applies to motions for compassionate release brought directly by an inmate, and therefore whether Courts consider whether the defendant remains a danger to the community, § 3582 still requires the Court to consider the § 3553(a) factors, one of which is "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Further, the Government

4

submits even if not found to be applicable, § 1B1.13 is at the very least instructive on the pertinent issues of a motion for compassionate release. *See United States v. Pelichet*, 2020 WL 6825699, at *5 (D.S.D. Nov. 20, 2020) ("With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance." (*citing Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release)); *United States v. Gashe,* 2020 WL 6276140 at *3 (N. D. Iowa Oct. 26, 2020) ("I agree with those courts that have found that although [§ 1B1.13] provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the FSA's changes.").

As the proponent of a motion, the inmate bears the burden of proving both that they have satisfied the procedural prerequisites for judicial review—*i.e.*, that they have "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden"—and that "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.").

### III. The Defendant has Not Identified Extraordinary and Compelling Reasons

To be entitled to compassionate release, the Court must find that the defendant has demonstrated that "extraordinary and compelling reasons warrant such a reduction," that "such a

5

reduction is consistent with applicable policy statements issued by the Sentencing Commission," and only "after considering the factors set forth in section 3553(a)." 18 U.S.C. 3582(c)(1)(A)(i). In *United States v. Jones,* the Sixth Circuit provided a three-step test a district court should follow when reviewing motions for compassionate release. 2020 WL 6817488, at *6 (6th Cir. Nov. 20, 2020). "At step one, a court must find whether extraordinary and compelling reasons warrant a sentence reduction. At step two, a court must find whether such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission … At step three, § 3582(c)(1)(A) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Id* (internal quotations and citations omitted).

The Sentencing Commission's pertinent policy statement related to extraordinary or compelling reasons appears at U.S.S.G. § 1B1.13. As amended November 1, 2018, the statement repeats the text of 18 U.S.C. § 3582(c)(1)(A) and adds that the court should reduce the sentence only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Because the Eighth Circuit has not yet decided the applicability of § 1B1.13 as it relates to motions brought directly by inmates, the Government argues that it should still be considered. The BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. Courts have frequently upheld the BOP's discretionary authority in its management duties over federal prisoners. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over [the place of imprisonment and treatment programs].").

As previously discussed, the Eighth Circuit has not yet decided whether § 1B1.13 applies to motions for compassionate release brought directly by an inmate. Nonetheless, the Application Notes for § 1B1.13 are instructive and provide guidance for the Court when determining whether the defendant has demonstrated an extraordinary and compelling reason for a sentencing reduction. *See United States v. Gunn,* 2020 WL 6813995, at *1-2 (7th Cir. Nov. 20, 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive."); *United States v. Pelichet*, 2020 WL 6825699, at *5 (D.S.D. Nov. 20, 2020) ("With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance." (*citing Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release)); *United States v. Gashe,* 2020 WL 6276140 at *3 (N. D. Iowa Oct. 26, 2020) ("I agree with those courts that have found that although [§ 1B1.13] provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the FSA's changes.")

**A. Medical Condition of the defendant.**

The application notes for U.S.S.G. 1B1.13 define medical condition of the defendant as:

Medical Condition of the Defendant.--

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(U.S.S.G. § 1B1.13 Application Note 1(A).)

The defendant has made an inadequate showing of extraordinary and compelling circumstances. There is no evidence or claim that he is unable to provide self-care or perform daily living activities. The defendant has failed to sustain his burden to prove that he meets the requirements for compassionate release or a reduction of sentence. The defendant does not have a terminal illness/suffer from any physical or mental condition that substantially diminishes his ability to provide self-care within the correctional facility. In this instance, the defendant cites dental issues, suffering from allergies and asthma, as well as having a "bad left leg". (D.E. 63.)

The defendant claims he is not provided with basic dental care and states he has had only 3 teeth cleanings in 12 years and only one in the last five years which was "out of the blue" two weeks ago. (D.E. 63.) Upon review of the defendant's medical records, it shows the defendant submitted a request for a teeth cleaning on September 17, 2021.[1] Based on the defendant's own motion, he received a teeth cleaning after he submitted the request. The Government questions if the defendant submitted a request for teeth cleaning prior to this date. Clearly the BOP acted upon the request. Further, the defendant's medical records show on three separate occasions in

---

[1] The Government obtained the last year of the defendant's BOP medical records. Medical records are available upon request.

8

December 2020, January 2021, and February 2021, the defendant complained of tooth pain and was able to get an extraction of the three non-restorable teeth.

Next, the defendant cites he has asthma and allergies to feathers, dust, pollen, and mold. (D.E. 63.) As the defendant states, he is provided with three separate medications. (D.E. 63.) The medical records also confirm the BOP is aware of the defendant's allergies and asthma and he currently has medication. As noted by the defendant and confirmed in the medical records, the BOP has made accommodations to his physical limitations due to his bad leg. He is restricted to the lower bunk within his cell. (D.E. 63).

The defendant does not identify any extraordinary nor compelling medical reasons to warrant a reduction in sentence to time served. Many other inmates, and people throughout the world, suffer from similar issues as presented by the defendant. Based on the medical records, it would appear the BOP is acting upon the defendant's medical issues once it is brought to the BOP's attention. Though the defendant may believe care is not being as provided as quickly as he would hope, he fails to understand many people outside the BOP are experiencing similar issues as far as delays in receiving nonemergent medical and dental care. The global pandemic has slowed down these processes within and outside of the BOP. There are no extraordinary and compelling reasons, as those terms are defined for the purpose of 18 U.S.C. § 3582(c)(1)(A), justifying compassionate release in this case.

While the Government is attune to the difficulties facing inmates, this particular instance simply fails to meet the requirements of the law and policy. 18 U.S.C. § 3582(c) does not allow a court to modify a term of imprisonment absent extraordinary and compelling reasons that warrant such a reduction. The circumstances here do not rise to such a standard, and the defendant's request does not meet the requirements for release. In *Dillon v. United States*, 560 U.S. 817, 826,

9

Case 4:07-cr-00105-GAF    Document 65    Filed 11/29/21    Page 9 of 17

(2010) the Supreme Court determined that the sentencing court could only consider a reduction in sentencing if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Based on that reasoning, U.S.S.G. § 1B1.13 Application Note 1(A) is mandatory and the defendant's request does not meet the requirements for release.

**B. Other Reasons.**

The application notes for U.S.S.G. 1B1.13 define other reasons as:

Other Reasons.--

>As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

(U.S.S.G. § 1B1.13 Application Note 1(D).)

Here, the defendant has not made an adequate showing that there are extraordinary and compelling reasons to warrant a sentence reduction. Rather, the defendant states he has "provided hundreds of thousands of dollars worth of labor" with UNICOR while he was only "paid pittance". (D.E. 63.) The defendant seems to fail to understand the purpose of UNICOR. The purpose of UNICOR is to "protect society and reduce crime by preparing inmates for successful reentry through job training". Additionally, $.78 of each dollar is used to buy raw materials, supplier services, and equipment from the private sector in which more than half are from small or disadvantaged businesses. $.18 of each dollar is used to cover operational costs. $.04 of each dollar is for the inmates to primarily use for important financial obligations. *See* https://www.bop.gov/inmates/custody_and_care/unicor_about.jsp. The program provides training and helps to reduce the recidivism rate at no cost to the taxpayers as opposed to making a profit. Needless to say, the taxpayers' foot the bill for funding the BOP in which the defendant is currently housed.

The defendant also states he has to use a typewriter as opposed to a computer and the law library is seldom available for those inmates who work. (D.E. 63.) Though unfortunate for the defendant, neither of these are considered extraordinary nor compelling. Further, § 3582 contemplates compassionate release, not the widespread release of inmates serving lawfully-imposed sentences.

**IV. Defendant Remains a Danger to the Community and Section 3553(a) Factors Do Not Support Release**

This Court may not modify or reduce the defendant's sentence without considering the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense and history and characteristics of the defendant; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from future crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[2] 18 U.S.C. § 3582(c); *see also United States v. Jones*, 2020 WL 6817488, at *11 (6th Cir. Nov. 20, 2020) (citing *Gall v. United States*, 552 U.S. 38 (2007) ("District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision."). Consideration of these factors does not allow the Court to grant the defendant's motion for compassionate release.

---

[2] U.S.S.G. § 1B1.13(2), states that even if a prisoner demonstrates "extraordinary and compelling reasons," he is not entitled to compassionate release if he poses "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." As discussed above, Courts are divided as to whether § 1B1.13 applies outside the context of a motion filed by the BOP. However, § 3582 unquestionably requires the Court to consider the § 3553(a) factors, which encompasses the arguments the Government has raised with regard to the defendant's presentation of a danger to the community and the need to protect the public.

11

After considering the factors set forth in § 3553(a), and the relevant policy statement, a reduction in the defendant's sentence is not warranted and the defendant's motion should be denied. The § 3553(a) Factors Include:

(1) nature and circumstances of the offense and the history and characteristics of the defendant. § 3553(a)(1).

**Nature and circumstances of the offense:**

On February 26, 2007, an Independence, Missouri, Police Department ("IPD") officer saw a vehicle driven by the defendant fail to stop at a red light and then also fail to signal for a right-hand turn. Then the vehicle began to drive approximately 45 mph in 25 mph zone. (Presentence Report ("PSR") ¶ 9.) The officer then activated emergency lights and conducted a traffic stop of the vehicle. A computer check revealed the defendant had active warrants. The defendant was placed under arrest for the outstanding warrants. (PSR ¶ 10.)

During the pre-tow search of the defendant's vehicle, officers recovered:

- $2,000 in U.S. currency;
- A digital scale;
- A 5-inch glass tube, commonly used to inhale methamphetamine; and
- 316.76 grams of methamphetamine.

Upon recovering the methamphetamine, the defendant was placed under arrest for possession of a controlled substance as well. (PSR ¶ 11.)

**History and characteristics of the defendant:**

When the defendant was 21 years of age, he was convicted of possession of drug paraphernalia. (PSR ¶ 30.) The following year, the defendant was convicted of possession of a controlled substance (methamphetamine). While on probation, the defendant received four

violation reports. One of which the defendant was an absconder. When he was arrested by Independence, Missouri, Police Department, he was found and charged with possession of a controlled substance (methamphetamine) and drug paraphernalia. The third violation report was for the defendant testing positive for marijuana and the fourth violation report was for testing positive for methamphetamine. (PSR ¶ 31.)

At the age of 26, the defendant was convicted of attempting to manufacture methamphetamine. The defendant was sentenced to 40-months custody in the BOP and 5-years of supervised release. The defendant completed his custody portion, but the Court issued a supervised release violator's warrant due to allegations of the defendant failing to report and participate in drug testing. The defendant was arrested by the IPD after a high-speed chase. At the time of the arrest, the officers recovered 38 live rounds of ammunition and a baggie containing methamphetamine. The defendant's supervised release was revoked, and he was sentenced to 16 months of custody. (PSR ¶ 34.) The defendant has several other traffic convictions. (PSR ¶ 32, 33, and 35.)

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; *to protect the public from further crimes of the defendant*; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)(2)(A)-(D) (emphasis added).

The defendant has a history of using, possessing, and attempting to manufacture methamphetamine. He has previously been incarcerated and shortly after release, was involved in a high-speed chase and recommitted to custody. The defendant must complete his sentence in full

to provide just punishment and afford proper deterrence to criminal conduct. Clearly his first incarceration did not provide the proper deterrence the defendant needs.

(3) the kinds of sentences available. § 3553(a)(3).

The statutory provisions were not less than 20 years and not more than life imprisonment. (PSR ¶ 64.)

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress; and that except as provided in section 3742(g), are in effect on the date the defendant is sentenced § 3553(a)(4)(A).

With a total offense level of 31 and criminal category of IV, the sentencing range was 240 months. However, the calculated guideline range of 151 to 188 months was overridden by the statutory mandatory minimum of not less than 20 years. Therefore, the guideline range was 240 months. (PSR ¶ 65.)

Further, U.S.S.G. § 1B1.13 directs Courts to also consider the factors outlined in 18 U.S.C. § 3142(g) in order to determine whether the defendant remains a danger to the community. Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). Consideration of these factors does

14

not allow this Court to conclude that this defendant is not a danger to the safety of any other person or the community.

Nothing about the defendant's motion reduces the defendant's danger to others nor minimizes other § 3553(a) factors. The defendant has failed to demonstrate that the 18 U.S.C. § 3553(a) factors the Court considered at the time of sentencing have changed, nor that the defendant is no longer a danger to the community, therefore the Court should deny the defendant's motion for release.

### V. Record of Rehabilitation is Not an Extraordinary and Compelling Reason

Finally, the defendant asserts he has demonstrated a record of rehabilitation, and the Government does not dispute that the accomplishments the defendant has made in prison, as listed and documented in his motion (D.E. 63), are laudable. However, rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for a reduction of a term of imprisonment. (U.S.S.G. § 1B1.13 Commentary n.3; 28 U.S.C. § 944(t).)

## CONCLUSION

The defendant presents a variety of issues he claims to be experiencing within the BOP. However, none of his claims qualify as extraordinary nor compelling. The defendant's claims are inconveniences of being housed within the BOP as opposed to life threatening medical issues, qualifying age, or qualifying family circumstances. The defendant does not present extraordinary nor compelling reasons that justifies a reduction of his sentence, the Court should not reconsider the terms of his sentence.

Based on the foregoing, the Government respectfully requests that the defendant's motion for compassionate release be denied.

Respectfully submitted this 29th day of November 2021.

Teresa A. Moore
Acting United States Attorney

/s/ *Joseph M. Marquez*

Joseph M. Marquez
Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a copy of the foregoing was delivered on November 29, 2021, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record and USPS Certified Return Receipt to the defendant at:

    David Taylor
    Reg. No. 13682-045
    FCI Milan
    Federal Correctional Institution
    P.O. Box 1000
    Milan, MI 48160

            */s/ Joseph M. Marquez*
            Joseph M. Marquez
            Assistant United States Attorney